# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 2:15-cv-04245-NKL |
| ) | |
| JULIE R. BERNET, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant Julie R. Bernet moves to set aside the Clerk's entry of default. Doc. 33. Plaintiff United States of America opposes the motion and renews its request for entry of final default judgment. Doc. 34. Bernet's motion to set aside is denied and the United States' renewed request for entry of final default judgment is granted.

**I.  Background**

In this lawsuit, the United States seeks to recover amounts past due on student loans taken out by Bernet. The Complaint reflects that Bernet secured a Direct Consolidation loan under the William D. Ford Federal Direct Loan Program from the U.S. Department of Education, signing a Promissory Note on 3/11/2001 and agreeing to repay. Doc. 1-1 (Exhibit A). The loan funds were disbursed in the amounts of $63,669.44 and $69,909.35 on 4/24/2001. Doc. 1-2 (Exhibit B). The Department demanded payment according to the terms of the Promissory Note, but Bernet defaulted on the obligation on 12/9/2009. After crediting payments from all sources, the Department seeks to recover the principal balance and unpaid interest.

This case was originally filed in the District Court of Kansas, and transferred to this Court on the United States' motion, after the United States learned Bernet was living in

Missouri. Bernet was served with the summons and complaint on 12/18/2015, but filed no responsive pleading. On 2/1/2016, the United States filed a motion for entry of default and final default judgment under Fed. R. Civ. Pro. 55(b).

A Clerk's entry of default was entered on 2/22/2016, and on the same day, the Court entered an Order directing Bernet to show cause why final default judgment should not be entered against her. Bernet, who was proceeding *pro se*, asked for an extension of time to respond, stating she was looking for an attorney to represent her and that she intended to defend against the lawsuit. Bernet also explained that the materials she was served contained a header referencing the District Court of Kansas, and when she looked up the Kansas case online, it was marked as closed. Although the United States subsequently served materials containing a District Court of Missouri heading, Bernet said she assumed the case was closed, and then realized in February 2016 that it was open and proceeding in this Court, when she received the Order to show cause. Bernet's motion for extension was granted.

On 4/1/2016, still *pro se*, Bernet filed an "objection" to the United States' motion for entry of final judgment, stating she was defrauded by the college she attended. Doc. 24. She stated that she completed all academic requirements, passed her National Board examination, and tried to obtain "ample volume of patients" to treat in the college clinic to satisfy clinic requirements, but was expelled without receiving a degree. Doc. 24, pp. 1-2. She cites a district court case she filed against the college in 1995, in which she won a jury verdict on claims of fraudulent misrepresentation and breach of contract, and obtained a judgment for actual and punitive damages. *See Bernet v. Cleveland Chiropractic,* U.S. District Court, W.D. Mo., no. 4:95-cv-00567-DW. Filings in that case, after entry of the judgment on the jury verdict, reflect

that the parties reached a settlement and stipulated to vacation of the judgment, and that in January 1997, Bernet dismissed her claims against the college with prejudice.

In view of Bernet's 4/1/2016 "objection," the United States was ordered to show cause why its motion for entry of final default judgment should not be denied. It responded that Bernet received filings after she received the service materials, and those subsequent filings were correctly captioned, so she should not be heard to claim confusion about whether the case was ongoing. It further argued that Bernet had no meritorious defense to its claim for recovery of the loan, so setting aside the clerk's entry of default would be futile. Doc. 29.

The Court denied the United States' motion for entry of final default judgment, without prejudice. Doc. 30. After holding a teleconference, the Court gave Bernet the opportunity to identify in writing a meritorious defense and citations to applicable authority, to show why the Clerk's entry of default should be set aside and final default judgment should not be entered. Doc. 32. Bernet filed the motion to set aside that is now before the Court. The United States argues that the clerk's entry of default should not be set aside because Bernet has shown no good reason to do so, and it renews its request for entry of final default judgment based on lack of a meritorious defense. Doc. 34.

**II.    Discussion**

Rule 55(c) provides that a clerk's entry of default may be set aside for "good cause shown" and final default judgment may be set aside "in accordance with Rule 60(b)." Although the good cause standard for setting aside entry of default is "more lenient" than the Rule 60(b) showing required for setting aside final default judgment, "the same factors are typically relevant in deciding whether to set aside entries of default and default judgments[.]" *Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 784 (8th Cir. 1998). Specifically, courts consider "whether the

3

conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Id.* (citing *Hoover v. Valley West DM,* 823 F.2d 227, 230 (8th Cir. 1987)). Further, whether to enter or set aside a final default judgment against a party is a decision that is committed to the "sound discretion" of the court. *F.T.C. v. Packers Brand Meats, Inc*., 562 F.2d 9, 10 (8th Cir. 1977).

In connection with its ruling on the United States' original motion for entry of final default judgment, the Court considered whether Bernet was blameworthy or culpable for misconduct with respect to her failure to promptly respond once she was served. Doc. 30, p. 3. Based on the record before it, the Court could not conclude Bernet had willfully violated court rules, engaged in contumacious conduct, or intentionally caused delay. *Id.* The record is no different now, and the Court reaches the same conclusion.

Nonetheless, Bernet has failed to show she has a potentially meritorious defense. The Department has broad authority to collect student loans, including loans that are in default. 20 U.S.C. § 1082(a); 34 C.F.R. § 30.1. The elements of an action to collect on a promissory note are: (1) the existence of a valid promissory note signed by the maker; (2) a balance due on the note; and (3) a demand on the maker for payment that has been made and refused, leaving the maker in default. *Mobley v. Baker,* 72 S.W.2d 251, 257 (Mo. Ct. App. 2002). Bernet does not dispute that she signed and took out the Direct Consolidation loan in 2001 and promised to repay the Department, that the loan was disbursed and interest has accrued, and that she has failed to repay the debt, leaving her in default. Thus, all elements are met here.

But, Bernet argues, when she started school, a "representative of Cleveland Chiropractic College prepared [her] loan application, specified the type of loan, determined the loan amount,

4

prepared the promissory note, selected the lender, presented the loan agreement to [her] to sign, and forwarded the loan application and promissory note." Doc. 33, p. 6 of 17. She states that those loan materials did not contain proper notices. Further, she "claims that Cleveland Chiropractic College failed to provide the promised training, ample volume of patients in the clinic, and job placement services, 'leaving [her] and other students unable to repay student loans for an education they never received.'" *Id.* Bernet argues that because she sued the college in 1995 and won actual and punitive damages for breach of contract and fraud, her "loans [are] unenforceable on grounds of mistake, fraud or illegality[.]" *Id.*

Bernet's arguments are unpersuasive. Whether the loan materials she received from the college did not in fact contain proper notices, those notices are not related to the loan Bernet took out from the Department, and Bernet cites no authority that demonstrates allegedly improper notices for a prior loan taken from one entity could somehow permit her to avoid repayment of a later loan taken out from a different entity.

Furthermore, as the United States points out, even if Bernet "never received" an education from the college as she argues, Missouri does not recognize a cause of action for educational malpractice. *Bunker v. Assoc. of Mo. Elec. Cooperatives,* 839 S.W.2d 608, 610-11 (Mo. Ct. App. 1992). Student loan debts are not even dischargeable in bankruptcy, inasmuch as "the continued vitality of the [student loan] programs depend[s] on the repayment of outstanding loans and [] avoid[ing] potential abuse." *In re Chapman,* 238 B.R. 450, 453 and 457 (W.D. Mo. 1999). In short, claims against educational institutions relating to the education received, or otherwise seeking to avoid payment obligations, are not generally favored.

Bernet's authorities are also inapplicable and unhelpful to her. From pages 3 to 9 of her motion, Doc. 33, she recites what appears to be some history of federal laws relating to student

5

loans and how the laws affect schools and private lenders that made loans. But the loan at issue here was made by the federal government. Other citations, *id.,* pp. 8-9 of 17, are to inapplicable cases. In *Consumer Financial Protection Bureau v. Corinthian Colleges, Inc.,* 2015 WL 10854380 9N.D. Ill. Oct. 27, 2015), the court granted default judgment, finding that a private college violated the federal Consumer Financial Protection Act and the Fair Debt Collection Practices Act, by brokering large, high-interest loans to its students to pay for the high cost of tuition; misrepresenting job placement rates and career services in order to induce students to take out the loans; and denying students access to the institution in order to extract payment for the loans and engaging in other abusive debt collection practices. Corinthian was ordered to disgorge its "ill-gotten gains," *id.*, at *6, and damages were awarded, including restitution in the amount of debt incurred by consumers in connection with the loans. Bernet does not claim Cleveland College engaged in the abusive practices at issue in *Consumer Financial*, and in any event, the case says nothing about forgiveness of Direct Consolidation loans made by the government.

In *State ex rel. Main v. Oakland City University,* 426 F.3d 914 (7th Cir. 2005), the court addressed whether a university recruiter stated a claim under the False Claims Act, based on the university's alleged, knowingly false representations that it would not pay contingent fees to recruiters, for purposes of obtaining federal subsidies. The court did not address at all whether students who were recruited by persons who received unlawful contingent fees would have some sort of defense to payment of student loans.

A third case Bernet cites, *Verni v. Cleveland Chiropractic College,* 212 S.W.3d 150 (Mo. 2007) (en banc), involved a student's claim that he was wrongfully expelled after Cleveland Chiropractic concluded he had stolen an exam from an instructor and sold it. The student sued

6

for breach of contract, and fraudulent misrepresentation and nondisclosure. He won one claim in the trial court, for breach of contract against the instructor, which the Missouri Supreme Court reversed. Nothing in the opinion addresses loan obligations or forgiveness.

In summary, nothing Bernet cites from pages 3 to 9 of her motion demonstrates that a student's Direct Consolidation loan, or any loan taken directly from the government without involvement of a school or private lender, was or may be forgiven, nor that the college's conduct may constitute a meritorious defense to repayment of such a loan.

Pages 9 to 15 of Bernet's motion concern her 1995 lawsuit against the college, and a 1999 class action lawsuit brought against it, *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200 (8th Cir. 2002).[1] As for her 1995 lawsuit, nothing before the Court demonstrates that the loan Bernet took out from the Department in 2001 was related to the issues in that case. Furthermore, Bernet's stipulation to vacation of the judgment and voluntary dismissal of the claims against the college with prejudice severely undercut her reliance on the lawsuit as demonstrating "mistake, fraud or illegality," inasmuch as she no longer has a judgment against it.

The *Troknya* case is also unhelpful to her. In that case, the plaintiffs were former students of the college, who had each paid $50,000 in tuition and graduated in 1997. They sued for breach of contract, fraud, and misrepresentation, claiming the college failed to provide them the quality and quantity of clinical training promised to them prior to their enrollment. More specifically, they claimed the college expressly promised in writing that it would provide the clinical patients, and that students would see an ample volume and a variety of clinical patients, none of which was true. The jury returned a verdict of $1 for each plaintiff on the negligent misrepresentation claim, which the Eighth Circuit affirmed, holding that the evidence supported such amount of monetary compensation for the plaintiffs' costs of having to find and recruit

---

[1] Bernet does not claim to have been a party to *Troknya*.

7

clinic patients themselves. The jury also awarded $15,000 apiece for punitive damages on the same claim, which the Eighth Circuit reversed, for lack of clear and convincing evidence that the college knew or should have known its dissemination of false information would likely cause injury. *Id.* at 1209. Nothing in the opinion suggests the students had a defense to loan obligations or were otherwise entitled to relief such as restitution with respect to the $50,000 in tuition the students had each paid. Such issues were not even mentioned.

Finally, at pages 15-17 of her motion, Bernet points to the "Borrower Defense to Repayment" program, which she says applies to a Direct Consolidation loan and may operate to discharge it, when a borrower has a defense to repayment under state law and the cause of action directly relates to the loan or to the school's provision of educational services for which the loan was provided. Bernet states that she has "already begun the process of applying for this relief but could potentially lose this right once a default judgment has been permanently entered against her." Doc. 33, p. 16 of 17. Whether Bernet has applied for, will qualify for, and will obtain such relief is simply speculation. She points to no application materials she has actually submitted, nor any decision or other communication from the program. She has been aware since sometime prior to 12/9/2009 that the United States was demanding payment on the loan and that she was declared to be in default on 12/9/2009. She has also been aware since at least February 2016 that the United States was taking formal action to collect the unpaid debt. If the Borrower Defense to Repayment Program applies to her situation, she has had ample time to pursue relief and demonstrate a defense based on it, but has simply failed to do so.

Accordingly, Bernet has failed to demonstrate a meritorious defense that justifies setting aside the entry of default or denying entry of default judgment. *See Packers Brand Meats*, 562 F.2d at 10 and n. 3 (affirming entry of default judgment, where among other reasons, default was

8

based on the fact that the defending parties had had ample time to seek authorities in support of their defense, yet had provided none).

Finally, the plaintiff would be prejudiced if the default were excused. Bernet took out the loan in 2001. Although the Department demanded payment in 2009, Bernet defaulted, and seven years later, the loan remains unpaid. An even further delay would increase the accumulation of interest and exacerbate the possibility that the amounts due will never be recovered.

### III.   Conclusion

Defendant Julie R. Bernet's motion to set aside, Doc. 33, is denied and Plaintiff United States of America's renewed request for entry of final default judgment is granted.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  July 25, 2016
Jefferson City, Missouri